WISCONSIN & ARKANSAS LUMBER COMPANY v. BRADY.

Opinion delivered March 5, 1923.

1. TRIAL—ASSUMPTION OF UNDISPUTED FACT.—An instruction which assumed a fact about which there was no dispute was not erroneous.

2. RAILROADS—NEGLIGENCE—JURY QUESTION.—In actions for personal injuries and for damages to an automobile struck by cars backed over a highway without warning, plaintiff's view being obstructed, *held* that defendant's negligence was for the jury.

3. RAILROADS—DISCOVERED PERIL.—Where defendant's brakeman on a car being backed over a public crossing testified that he discovered plaintiffs when they were about 40 or 50 feet from the crossing and the front end of the flat-car nearest the crossing was 30 feeet from it, and the engineer testified that it was possible to stop the train within a distance of 10 or 12 feet at the rate it was moving, the issue of discovered peril was for the jury.

4. RAILROADS—DUTY OF TRAVELERS AT CROSSING.—While it is necessary for a traveler to look and listen for trains as he approaches a public crossing, he is not required to stop for that purpose,

unless necessary to do so in the exercise of ordinary care for his safety.

5.   RAILROADS—CONTRIBUTORY NEGLIGENCE.—Where plaintiffs were approaching a crossing slowly when injured, and there was a dispute as to whether a fence and hedge-row entirely obscured the train, which was backing over the crossing, the question of contributory negligence was for the jury.

6.   NEGLIGENCE OF WIFE IMPUTABLE TO HUSBAND.—Where a husband was driving in his automobile driven by his wife under his control, her negligence in driving the car when it was struck by a train, if any, was imputable to him, and should have been considered in determining the liability for damage to the car.

Appeal from Hot Spring Circuit Court; *W. H. Evans*, Judge; reversed in part.

*Henry Berger* and *Mehaffy, Donham & Mehaffy*, for appellants.

*D. D. Glover*, for appellees.

HUMPHREYS, J. Appellee, Mrs. Hosea Brady, as mother and next of kin to Louis Lindel Brady, recovered damages in Hot Springs Circuit Court against appellants, in the sum of $500, for injuries received by her child; and appellee, Hosea Brady, recovered damages against said appellants in the sum of $50 for injuries to his automobile, on account of alleged negligence of appellants through their servants. The particular acts of alleged negligence was the backing of a train of flat-cars across a public road, upon which appellees were traveling in an automobile, without warning them of its approach, and which train was obstructed from their view by an office, other buildings, a fence and hedgerow, until within ten or twelve feet of the track, which train collided with the automobile and caused the injuries complained of.

Appellants filed an answer denying the allegation of negligence, and pleading, by way of further defense, that the injuries were the direct result of negligence of appellees in driving the automobile onto and against the flat-cars, without taking any care or precaution to look or listen, or, if necessary in the exercise of ordinary care, to stop for that purpose.

An appeal from the judgments has been duly prosecuted to this court, and the correctness of the judgments is assailed by appellants because the court gave certain instructions alleged to be erroneous, and refused to give others alleged to be correct, and erroneously modified others before giving them. The facts as reflected by the record are in substance as follows: two railroad tracks of appellant, thirty feet apart, running north and south, crossed the public road at right angles where the alleged injuries occurred. Buildings between these tracks were on both sides of the public road. The office, fence and hedgerow were on the south side, and the mill and lumber yard were on the north side. Appellees were going toward the east in the direction of Malvern, in a Ford car owned by Hosea Brady. Mrs. Hosea Brady was driving, and her husband was sitting beside her holding the baby, then twenty-two months old. According to their evidence, they were driving at the rate of six or eight miles an hour, and, on account of the obstructions on the south side of the road, did not see or hear the train until within ten or twelve feet of the track, at which time the train rapidly approached the crossing and collided with their car before they could stop it; that, as soon as they discovered the train, Mrs. Brady put on the brake and turned off the gas, and Mr. Brady turned off the engine; that the train was running much faster then than they had been traveling, and when they cut all the power off the automobile it reduced the speed enough to allow the front end of the flat-car to get by them some six feet before the collision occurred; that Mrs. Brady was accustomed to driving the car, and that she was looking to the front, as usual, when approaching the crossing.

According to the testimony of appellants, the flat-car was being backed across the road into the mill yard to place it for loading; that the train was moving about four to six miles an hour; that appellees were discovered forty or fifty feet from the crossing as they approached it; that the front end of the flat-car was then about thirty feet from the crossing; that immediately upon discover-

ing them the engineer shut the throttle, plugged the air valve and threw back the reverse lever; that, considering the speed of the train and other conditions, it could have been stopped within a distance of ten or twelve feet; that the reason the train reached the crossing first was because it was nearer than the automobile to the crossing; that the tracks did not cross a public highway, but a road that was traveled by the people a good deal.

The undisputed testimony showed that the train was backed across the road crossing, which had been generally traveled by the people for many years, without giving any warning whatever of its approach, and without having any one on the front end of the flat-car to watch and give signals.

At the request of appellants, the jury was permitted to go to the scene and approach the crossing in automobiles as an engine was backing a flat-car up the track toward the road crossing, so that it might observe conditions at first hand.

Appellants contend the instructions were erroneous because they did not take into account that the place where the injury occurred was private property and not a public road, thereby requiring appellants to exercise the same care to keep from injuring trespassers that they would have to exercise to keep from injuring travelers at a public road crossing. It is true, in instructing the jury, the court assumed that the place where the injury occurred was a public road crossing. All the witnesses testified it was such a crossing, unless it can be said that John A. Millen testified to the contrary. He did say the road was not a public highway, but at the time must have had in mind some technical conception of a public highway, for he admitted that the road had been generally traveled by the public for many years. We think the court's assumption warranted, for there was no real dispute in the testimony upon the point.

Appellants also contend that the court erred in submitting the issue of negligence on their part. It is

argued that there is no evidence upon which to base the issue. We think the evidence warranted the submission of that issue to the jury. The testimony tended to show that appellants backed two freight cars rapidly toward a public crossing without warning of any kind to travelers who might be approaching. The error, if any, was against appellees, for, according to the undisputed testimony, the bell was not rung or the whistle blown in the manner required by the statute. Aside from the fact that the whistle was not blown or the bell rung, the evidence tended to show that, as the train approached the public road crossing, it was obscured from the view of travelers until they were within ten or twelve feet of the crossing, and, notwithstanding such facts, that no one was stationed at the crossing or on the front end of the flat-car to notify the public or to signal the engineer or fireman. An inference might well have been drawn by the jury from these facts that appellants' train was operated negligently on that occasion. Appellants go further and assert the court assumed in several instructions that they were negligent in the operation of their train. After a careful reading of the instructions referred to, we do not think them susceptible of that construction.

Appellants also contend that the court erred in giving instruction No. 9, based upon the doctrine of discovered peril, for the alleged reason that there was no evidence to support the instruction. John A. Millen, acting brakeman, testified that the train was moving at the rate of four miles an hour; that he discovered appellees when they were forty or fifty feet from the road crossing, and immediately notified the engineer of their approach; that the front end of the flat-car nearest the road crossing was then thirty feet from it. C. J. Page, the engineer, testified that it was possible to stop the train within a distance of ten or twelve feet, at the rate it was moving. The jury would have been justified from these statements in drawing an inference that the appellants discovered the peril to appellees in time to have stopped the train

and avoided the injury. It was proper therefore to submit that issue to the jury.

Appellants also contend that the court erred in refusing to direct a verdict in their favor as to both appellees, upon the theory that the undisputed testimony showed that the negligence of Mr. and Mrs. Brady was the sole and proximate cause of the injuries. It is insisted that Mr. and Mrs. Brady should have stopped to look and listen as they approached the crossing. While it is necessary for a traveler to look and listen for trains as he approaches a public crossing, he is not required to stop for that purpose unless necessary to do so in the exercise of ordinary care for his safety. We cannot say, as a matter of law, under the facts in this case, that it was the duty of appellees to have stopped their car in order to look and listen. The testimony is in dispute as to whether the fence and hedgerow entirely obscured the train in the direction from which it came. There is nothing in the testimony tending to show that they could not have heard the whistle, if blown, or the bell, if rung, while riding along at a low rate of speed. The record does not reflect that the train was passing on schedule time. According to the testimony, appellees were approaching the crossing slowly and looking to the front. We think it was a question for the jury, under the facts, to say whether the injuries resulted wholly from the negligence of Mr. and Mrs. Brady, or wholly from the negligence of appellants, or from the concurring negligence of both.

Appellants also contend that the court erred in giving appellees' requested instruction No. 1, which is as follows:

"You are instructed that if you find from the evidence in this case that the defendant company, in the operation of one of their trains, negligently damaged plaintiff's car, without fault or negligence on his part, as alleged in his complaint, it will be your duty and you are instructed to find for the plaintiff, Hosea Brady, in what-

ever sum you find from the evidence that his car was
damaged.''

This instruction was erroneous because it ignored
the negligence of the wife as a defense to the action of
Hosea Brady for the injury to the automobile. Hosea
Brady owned the automobile, and was in no sense a guest
of his wife, so he had control, along with his wife, over
the movements of the car. The negligence of Mrs. Brady,
if any, therefore was imputable to Hosea Brady, and
should have been taken into account just as his own neg-
ligence, if any, in determining whether there was liability
on the part of appellants, for damage to the car. The
defect in instruction No. 1 was not cured by other in-
structions given by the court. The only one tending to
cure the defect was in conflict with the one given.

The judgment in favor of Mrs. Hosea Brady, as
mother and next of kin of Louis Lindel Brady, is affirmed;
and, on account of the error indicated, the judgment in
favor of Hosea Brady is reversed, and his cause of action
is remanded for a new trial.