227 So.2d 543 (1969)
Bertha Belle ZABNER, Appellant,
v.
HOWARD JOHNSON'S INCORPORATED OF FLORIDA, Appellee.
No. 2234.
District Court of Appeal of Florida. Fourth District.
October 31, 1969.
*544 Horace E. Beacham, Jr., Palm Beach, for appellant.
John R. Beranek, of Jones, Adams, Paine & Foster, West Palm Beach, for appellee.
CROSS, Chief Judge.
Plaintiff-appellant, Bertha Belle Zabner, appeals from an order granting a new trial entered in favor of the defendant, Howard Johnson's, Inc., of Florida, in a cause of action for damages for breach of implied warranty and negligence. We reverse.
This is the second appearance of this cause in the appellate court. The plaintiff, Bertha Belle Zabner, while a patron of Howard Johnson's restaurant, ordered a dish of maple walnut ice cream. While plaintiff was consuming this ice cream at the restaurant, a piece of walnut shell concealed therein punctured the plaintiff's upper gums, fractured and damaged some of her teeth. In the first appearance in this court, the plaintiff appealed from a final summary judgment entered in favor of the defendant. The judgment was entered on the theory that the harmful substance, i.e., the piece of walnut shell, was natural to the product sold and could not be called a foreign substance. The trial judge applied the so-called foreign-natural test. In a decision which was of first impression in the State of Florida, this court reversed and remanded the cause for a new trial. We rejected the natural-foreign test, and determined that the question of whether food is fit for the purpose intended, although it contains harmful natural substances, should be based on what the consumer might reasonably expect to find in the food as served and not on what might be natural to the ingredients of food prior to preparation. Zabner v. Howard Johnson's, Inc., Fla.App. 1967, 201 So.2d 824.
Upon remand the cause was tried before a jury. During cross examination the defendant *545 questioned the plaintiff as to her prior litigation and listed certain claims and suits by the plaintiff prior to the time of the subject suit. These questions concerned several claims and suits in which she had been involved regarding personal injuries. The case was submitted to the jury and resulted in a verdict in favor of the plaintiff.
Thereafter the defendant filed motion for new trial asserting in essence that the court was in error in curtailing defendant's counsel in his cross examination of the plaintiff from inquiring into plaintiff's history of previous litigation. The court granted the motion. It is from the order granting the motion for new trial that the plaintiff now appeals.
Initially we are faced with reviewing an order granting a new trial. Being mindful and cognizant that a stronger showing of abuse of discretion is required to reverse an order granting a new trial than denying one, the question for our determination herein is strictly one of law as uncontaminated by factual conflict and thus the area of discretion is drastically diminished. Gatlin v. Jacobs Construction Co., Fla.App. 1969, 218 So.2d 188.
This second appearance of this case also brings forth another factor of the law which is of first impression in the State of Florida, i.e., whether a plaintiff in a personal injury action may be cross examined as to claims or actions made or instituted by her prior to the present suit, and what limitations, if any, should be placed upon this cross examination.
The question of whether a complaining party may predicate error upon a trial court's action in restricting cross examination of a personal injury claimant as to her previous claims or actions and the consequent question whether such action was prejudicial, merely invoke specific application of the general rules governing cross examination of witnesses.
The purpose of cross examination is to get at the truth and, of course, too strict a limit on the scope of cross examination will hamper rather than achieve this end. This rule assumes that the direct testimony and cross examination will be on matters relevant to the case at bar. Relevancy describes evidence that has a legitimate tendency to prove or disprove a given proposition that is material as shown by the pleadings. Wigmore on Evidence, 3d ed. § 2. Relevancy has been defined as a tendency to establish a fact in controversy or to render a proposition in issue more or less probable. To be probable, evidence must be viewed in the light of logic, experience and accepted assumptions concerning human behavior.
There are many reported cases in other jurisdictions involving efforts on the part of both plaintiff and defendant to place before a jury evidence of past personal injury lawsuits. Most of the cases in which the question has been raised recognize that a plaintiff may properly be cross examined as to his previous injuries, physical condition, claims or actions for injuries similar to that constituting the basis of the present action for the purpose of showing that his present physical condition is not the result of the injury presently sued for but was caused wholly or partially by an earlier injury or pre-existing condition. O'Shea v. Jewel Tea Co., 7 Cir.1956, 233 F.2d 530.
The recognition of the propriety of such cross examination is based upon the reasoning that the matter so inquired about is pertinent to the issue of the plaintiff's present physical condition, and the evidence thereby elicited is admissible in respect to the matter of damages because the defendant is liable only for injuries resulting from his negligence and not from the residual effects of a prior injury or pre-existing condition. O'Shea v. Jewel Tea Co., supra.
Although there is some authority to the contrary, the courts have been extremely wary of permitting evidence of other lawsuits for impeachment purposes, since the innuendoes normally inherent in such *546 questions asked of the plaintiff cannot be overcome and generally result in unfair trial to the plaintiff and could succeed in defeating an otherwise meritorious cause. In Grenadier v. Surface Transport Corporation, 1946, 271 App.Div. 460, 66 N.Y.S.2d 130, the defendant bus driver filed an accident report admitting two previous accidents. On cross examination counsel elicited admissions that the driver actually had more than two prior accidents. This was for the sole purpose of attacking the credibility of the witness. The court in Grenadier stated that whether or not that was the object of counsel, the obvious effect of such testimony was to prejudice the minds of the jurors.
To the same effect are the following cases: Harper v. Dees, 1948, 214 Ark. 111, 214 S.W.2d 788; Nesbit v. Cumberland Contracting Co., 1950, 196 Md. 36, 75 A.2d 339; Brownhill v. Kivlin, 1944, 317 Mass. 168, 57 N.E.2d 539; Ryan v. International Harvester Co. of America, 1938, 204 Minn. 177, 283 N.W. 129.
In the instant case, the plaintiff's character as being litigious is certainly not in issue. Few courts have shown an inclination to admit exceptionally the character of a person charging a negligent act as throwing light on the probabilities of his conduct on the occasion in question. As a matter of law, the doctrine is maintained in very few jurisdictions and has been expressly repudiated in many. Courts have allowed evidence of habit of plaintiff or defendant as opposed to character on the issue of damages where relevant in either personal injury or wrongful death actions, although the confusion between whether one's regular response to a repeated situation, i.e., habit, or one's disposition, i.e., character, most of the time requires the expertise of a semanticist or a psychologist rather than a judge.
In the case at bar, the defendant sought to cross examine plaintiff basically to discredit her and impeach her testimony on the basis that the plaintiff had been a litigant and had pursued at least fifteen legal claims. Nine of these involved personal injuries unrelated to the personal injury at issue claimed against the defendant, and six involved other claims basically of a commercial nature. Introduction of the element of fifteen other lawsuits could have had no effect other than to try to prejudice the jury against the plaintiff. Litigiousness in the eyes of most people would reflect more upon character than upon the response to a repeated situation.
To determine litigiousness to be the proper subject of cross examination for impeachment purposes would be tantamount to stating that one creates a legal wrong by enforcing one's rights when they are violated. Such would be a gross infringement upon the basic rights granted to us by the Constitution of the State of Florida, which in § 4 of the Declaration of Rights, F.S.A. in essence states that all the courts of this state shall be open so that every person for any injury done to him in his lands, goods, person or reputation shall have remedy by due course of law and right and justice shall be administered without sale, denial or delay. The great Justice Cardozo once stated that to enforce one's rights when they are violated is never a legal wrong and may often be a moral duty. But what happens in many instances is that the violation passes with no effort to redress it, sometimes because of praiseworthy forbearance, sometimes from weakness and sometimes from mere inertia. But the law which creates a right can certainly not concede that an insistence upon its enforcement is evidence of a wrong.
For the foregoing reasons, the order granting defendant a new trial is reversed and the cause is remanded to the trial court with instructions to enter a judgment for plaintiff in accordance with the jury verdict.
Reversed and remanded with instructions.
McCAIN and REED, JJ., concur.