578 So.2d 747 (1991)
William James POWELL, Appellant,
v.
Richard NAPOLITANO, Appellee.
No. 90-00915.
District Court of Appeal of Florida, Second District.
March 29, 1991.
Rehearing Denied May 9, 1991.
John R. Mathias and Stephen K. Stuart of Stuart & Strickland, P.A., Tampa, and Richard J. Ovelmen of Baker and McKenzie, Miami, for appellant.
*748 David A. Maney of Maney, Damsker & Arledge, P.A., and Mac A. Greco, Jr., Tampa, for appellee.
SCHEB, Judge.
The sole issue on appeal is whether the trial court erred in granting Plaintiff Napolitano's motion for a directed verdict on the question of permanent injury. We hold that it did and reverse.
Richard Napolitano, appellee, filed a negligence action against William James Powell, appellant. Napolitano alleged he suffered permanent injuries as a result of an automobile accident on April 28, 1986 when Powell's car rear-ended Napolitano's vehicle.
Napolitano moved for a directed verdict at the close of the evidence at the jury trial. The court rejected Napolitano's motion as to liability, but granted it as to Napolitano's having sustained a permanent injury within the meaning of the Florida Motor Vehicle No-Fault Law. The jury then returned a verdict awarding damages to Napolitano. Powell appealed.
Powell argues the trial court erred in granting Napolitano's motion for directed verdict on the issue of permanent injury. We agree.
The applicable provision of the Florida Motor Vehicle No-Fault Law states:
(2) In any action of tort brought against the owner, registrant, operator, or occupant of a motor vehicle with respect to which security has been provided as required by ss. 627.730-627.7405, or against any person or organization legally responsible for his acts or omissions, a plaintiff may recover damages in tort for pain, suffering, mental anguish, and inconvenience because of bodily injury, sickness, or disease arising out of the ownership, maintenance, operation, or use of such motor vehicle only in the event that the injury or disease consists in whole or in part of:
(a) Significant and permanent loss of an important bodily function.
(b) Permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement.
(c) Significant and permanent scarring or disfigurement.
(d) Death.
§ 627.737(2), Fla. Stat. (1985). Here, Napolitano sought to establish that he sustained a permanent injury within a reasonable degree of medical probability. While the existence of permanent injury is ordinarily a factual one for the jury, Martin v. Young, 443 So.2d 293, 294 (Fla. 3d DCA 1983), here the trial court concluded a directed verdict was proper on that issue.
This court enunciated the standard for review of a directed verdict in Azar v. Richardson Greenshields Securities, Inc., 528 So.2d 1266, 1269 (Fla. 2d DCA 1988):
A motion for directed verdict admits the truth of all facts in evidence and every reasonable conclusion or inference based thereon which is favorable to the nonmoving party. Hartnett v. Fowler, 94 So.2d 724 (Fla. 1957). The motion must be denied if the evidence is conflicting or different conclusions or inferences can be drawn from it. Maximo Moorings Marine Center, Inc. v. Walke, 196 So.2d 215 (Fla. 2d DCA 1967). Further, the trial court may not pass upon the credibility of witnesses or weigh the evidence in ruling on the motion. Maas Bros., Inc. v. Bishop, 204 So.2d 16 (Fla. 2d DCA 1967).
Therefore, we must examine the record to determine if there is any conflicting evidence or inferences on the issue of permanent injury from which the jury could have drawn a conclusion favorable to Powell, the non-moving party.
Napolitano introduced considerable expert medical evidence from which a jury could conclude he suffered permanent injury as a result of the accident. Powell also presented expert medical evidence from which the jury could have concluded otherwise.
Specifically, the depositions of Gilberto E. Vega, M.D. and Thomas N. Newman, M.D. were admitted into evidence on behalf of Powell. Dr. Vega, an orthopedic expert, first saw Napolitano on May 5, 1986. While Dr. Vega initially diagnosed a *749 severe cervical and lumbar strain, when he last saw Napolitano on July 14, 1986, his opinion was Napolitano was 90-95% recuperated and he prognosticated "a complete resolution of his symptomatology as a result of the injury sustained." Dr. Vega further concluded Napolitano would be able to reach maximum medical improvement with no residual disability anticipated from the injury sustained.
Dr. Newman, a neurologist who saw Napolitano between July 7, 1986 and August 25, 1987, performed a physical and neurological examination on Napolitano. The test findings were normal, and he opined that he saw no evidence of permanent injury. We are aware Dr. Newman stated he would defer to Napolitano's current treating physician, Dr. John Baker, as to his orthopedic expertise on any disability resulting from the accident. Dr. Baker, who saw Napolitano as recently as November 1, 1989, concluded Napolitano had suffered a permanent injury. Dr. Newman's deference to Dr. Baker's opinion as to orthopedic injury, however, would only affect the weight of his testimony, not the admissibility of his opinion regarding Napolitano's permanent neurological injury.
In addition, Dr. James A. Fesler, a psychiatrist who examined Napolitano and his medical records, testified. He did not find any "objective" medical evidence of a permanent disability. He said, "I wouldn't be shocked if someone later came and told me with good supporting data that there isn't anything wrong with this guy."
As there was evidence from which a jury could conclude, at least by inference, that Napolitano did not suffer permanent injury, a directed verdict on that issue was improper. See Laberge v. Vancleave, 534 So.2d 1176 (Fla. 5th DCA 1988) (directed verdict that Vancleave suffered permanent injury reversed because one expert's testimony of no permanent physical injury and no opinion about a soft tissue injury conflicted with other expert's testimony of a soft tissue injury). See also Tripp v. Killam, 492 So.2d 472 (Fla. 4th DCA 1986); Martin v. Young, 443 So.2d 293 (Fla. 3d DCA 1983).
We reverse the trial court's directed verdict on the issue of permanent injury, vacate the judgment and remand for a new trial.
SCHOONOVER, C.J., and FRANK, J., concur.